UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SANDRA C., | : | |
| | : | |
| plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:19-cv-942(RAR) |
| | : | |
| ANDREW SAUL, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| defendant. | : | |

## RULING ON PENDING MOTIONS

Sandra C. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated July 30, 2018.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing and remanding her case for a hearing (Dkt. # 26-1) and defendant's motion to affirm the decision of the Commissioner. (Dkt. #21-1.)

For the reasons that follow, plaintiff's motion to reverse, or in the alternative, remand is GRANTED and the Commissioner's motion to affirm is DENIED.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g).  Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence.  Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.'" <u>Williams on Behalf of
Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting
<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  Substantial
evidence must be "more than a scintilla or touch of proof here
and there in the record." <u>Williams</u>, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are
payable to an individual who has a disability.  42 U.S.C.
§ 423(a)(1).  "The term 'disability' means . . . [an] inability
to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment. . . ."  42
U.S.C. § 423(d)(1).  To determine whether a claimant is disabled
within the meaning of the SSA, the ALJ must follow a five-step
evaluation process as promulgated by the Commissioner.[1]

---

[1] The five steps are as follows: (1) the Commissioner considers whether the
claimant is currently engaged in substantial gainful activity; (2) if not,
the Commissioner considers whether the claimant has a "severe impairment"
which limits his or her mental or physical ability to do basic work
activities; (3) if the claimant has a "severe impairment," the Commissioner
must ask whether, based solely on the medical evidence, the claimant has an
impairment listed in Appendix 1 of the regulations. If the claimant has one
of these enumerated impairments, the Commissioner will automatically consider
him or her disabled, without considering vocational factors such as age,
education, and work experience; (4) if the impairment is not "listed" in the
regulations, the Commissioner then asks whether, despite the claimant's
severe impairment, he or she has the residual functional capacity to perform
his or her past work; and (5) if the claimant is unable to perform his or her
past work, the Commissioner then determines whether there is other work which
the claimant could perform.  The Commissioner bears the burden of proof on
this last step, while the claimant has the burden on the first four steps.
20 C.F.R. § 416.920(a)(4)(i)-(v).

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[2]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on December 20, 2013 and again on May 30, 2014. (R. 477, 510-12.)[3] Plaintiff alleged a disability onset date of July 1, 2010. (R. 15.) The initial application was denied on April 23, 2014, and again upon reconsideration on September 9, 2014. (R. 212-15, 237-39.) Plaintiff then filed for an administrative hearing, which was held by ALJ Louis Bonsangue (hereinafter "the ALJ") on March 14, 2016. (R. 37-83.) The ALJ issued an unfavorable decision on June 27, 2016. (R. 187-96.) Plaintiff filed a request for review with the Appeals Council on June 28, 2016. (R. 356-57.) The Appeals Council granted

---

[2] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[3] The Court cites pages within the administrative record as "R. ___."

plaintiff's request for review on August 25, 2017.  (R. 202-06.)
The ALJ held a second hearing on April 4, 2018.  (R.  84-130.)
The ALJ issued an unfavorable decision on July 30, 2018.  (R. 9-
31.)  Plaintiff filed a request for review with the Appeals
Council on September 4, 2018.  (R. 430.)  The Appeals Council
denied plaintiff's request for review on April 17, 2019.  (R. 1-
8.)  Plaintiff then filed this action seeking judicial review.
(Dkt. #1-1.)

## DISCUSSION

Plaintiff argues that the ALJ failed to classify her
complex regional pain syndrome ("CRPS") and headaches as severe
impairments, inadequately considered Listings, erred in his
analysis of medical opinions, erred in considering physical
therapy records, erred in his credibility assessment, and
incorrectly relied on the Vocational Expert's testimony.  (Pl.
Br. 3, 5, 11, 16, 23, 31, 36.)  Based on the following, the
Court GRANTS plaintiff's motion and remands this matter for
reconsideration.

## I. The ALJ erred in not analyzing whether plaintiff's CRPS was a severe impairment.

First, plaintiff asserts that the ALJ erred in not finding
plaintiff's diagnosis of CRPS to be a severe impairment at Step
Two.  (Pl. Br. 3.)  In response, the Commissioner asserts that a
mere diagnosis of CRPS does not suffice to establish that the
CRPS was severe and, even if the CRPS were severe, the ALJ's

omission was harmless error because the ALJ considered the effects of CRPS in the remainder of the analysis.  (Def. Br.  3–4.)

"An ALJ must investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist, even where a plaintiff did not list that impairment on his or her disability application."  Guzman v. Berryhill, No. 15-cv-3920 (VB)(LMS), 2018 WL 3387319, at *21 (S.D.N.Y. June 12, 2018).[4]  Because the regulations require an ALJ to consider those impairments a plaintiff claims to have or about which the ALJ has evidence, "[t]his obligation is triggered without regard to whether the claimant has alleged that particular impairment as a basis for disability."  Prentice v. Apfel, 11 F. Supp. 420, 426 (S.D.N.Y. 1998).  Although plaintiff did not list CRPS on her disability applications, the record contains treatment notes that reference plaintiff's diagnosis of CRPS.

Further, because the treatment notes documented that plaintiff's CRPS lasted, or could have been expected to last, for a minimum of twelve continuous months, plaintiff's CRPS could be considered an impairment for disability purposes.  *See* R. 1575 (mentioning CRPS in January 2014); R. 2001 (mentioning

---

[4] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

CRPS in April 2016); *see also* <u>Whitley v. Colvin</u>, No. 17-cv-00121 (SALM), 2018 WL 1026849, at \*4–5 (D. Conn. Feb. 23, 2018) (finding the ALJ properly excluded from the analysis claimant's rhabdomyloysis diagnosis because no record evidence indicated the diagnosis persisted for more than twelve months).  Although the ALJ cites to treatment notes that contain evidence of plaintiff's CRPS (R. 20–21, 1575, 1975, 2002), the ALJ neither mentions plaintiff's CRPS nor discusses the impact that it may have on her ability to function, even though the state agency physicians referenced CRPS in their reports, the treatment notes document this diagnosis, and Dr. Wolf, who was plaintiff's treating orthopedic specialist, submitted a letter regarding its impact on plaintiff.  (R. 138, 150–51, 674, 663, 697, 699, 804, 808, 1401, 1407, 1411, 1455, 1477, 1559, 1569, 1575, 1834, 1839, 1841, 1959, 1964, 1987, 1994, 1998, 2001, 2005.)  Because the record demonstrates that plaintiff's CRPS was an impairment and the ALJ's decision does not discuss the potential effects of the CRPS on plaintiff's ability to function, remand is appropriate.

   a. *The record details that plaintiff's diagnosis of CRPS was a medical impairment that the ALJ should have considered at Step Two.*

   At Step Two of the sequential analysis, an ALJ shall consider impairments about which a claimant has complained or about which the ALJ receives evidence.  *See* 20 C.F.R. § 404.1512(a)(1); <u>Guarino v. Comm'r of Soc. Sec.</u>, No. 7:07-cv-

1252 (GLS/VEB), 2010 WL 199721, at *4 (N.D.N.Y. Jan. 14, 2010).

Medical evidence of signs, symptoms, and laboratory findings can

establish a medically determinable impairment.  20 C.F.R.

§ 404.1508.

CRPS, also known as Reflex Sympathetic Dystrophy Syndrome

(RSDS or RSD), "is a chronic pain syndrome most often resulting

from trauma to a single extremity."  Social Security Ruling

("SSR") 03-02p, "Titles II and XVI: Evaluating Cases Involving

Reflex Sympathetic Dystrophy/Complex Regional Pain Syndrome," 68

Fed. Reg. 59,971-01, 59,972, 2003 WL 22380904 (S.S.A. Oct. 20,

2003).  The Social Security Administration issued SSR 03-02p to

guide ALJs adjudicating disability claims that involve CRPS.

CRPS can be established through disproportionate complaints

of pain associated with a documented sign of one of the

following in the affected area: swelling, changes in sweating,

changes in skin color, abnormal hair or nail growth,

osteoporosis, or involuntary movements.  SSR 03-02p, 68 Fed.

Reg. at 59,973; *see, e.g.*, Blodgett v. Comm'r of Soc. Sec., No.

3:16-cv-02110 (JAM), 2018 WL 525992, at *4 (D. Conn. Jan. 24,

2018) (recognizing CRPS as an impairment due to doctor's

diagnosis, disproportionate heel pain, and differences in nail

growth between feet); Scott v. Colvin, No. 15-404-JWD-EWD, 2017

WL 1243154, at *10 (M.D. La. Feb. 24, 2017) (classifying CRPS as

an impairment where claimant "had a definitive diagnosis of

RSDS/CRPS by a treating physician, as well as clinical findings of severe pain and swelling in his hands during the period of alleged disability"). Here, plaintiff's treating orthopedic specialist, Dr. Jennifer Wolf, diagnosed plaintiff with CRPS, and plaintiff also presented symptoms commonly associated with CRPS.

In January of 2014, Dr. Wolf first recorded her suspicion that plaintiff had CRPS as an issue distinct from her carpal tunnel syndrome. (R. 674, 1575.) On February 26, 2014, Dr. Wolf noted that plaintiff's pain persisted following plaintiff's right-hand carpal tunnel surgery, which was "not unexpected given the previous diagnosis of likely CRPS." (R. 663, 1559.) Dr. Wolf also highlighted the signs of CRPS in treatment notes and referral notes to occupational therapists, describing the purplish discoloration and abnormal sweating of plaintiff's hand. (R. 674, 697, 908, 911, 1545, 1559.) Dr. Wolf repeatedly raised that CRPS might have been the cause of plaintiff's pain. (R. 804, 808.)

On July 25, 2014, specialist Dr. Isaac Moss recorded plaintiff's presentation as "more consistent with RSD of the right hand." (R. 1959.) Dr. Wolf seconded Dr. Moss's suspected diagnosis, noting that plaintiff had "hypersensitivity throughout the whole palm, not consistent with carpal tunnel syndrome." (R. 1966.)

The record indicates that plaintiff's CRPS persisted.  On August 19, 2015, Dr. Wolf noted the "patient has chronic regional pain syndrome" and that revision carpal tunnel release was unlikely to resolve plaintiff's pain "as she has CRPS."  (R. 1477, 1980.)  After plaintiff's hand surgery in November 2015, Dr. Wolf recorded that the left side had minimal signs of CRPS, which was a relief given her history of CRPS on her right side. (R. 1984, 1987.)  Dr. Wolf's treatment notes from January 2016 refer to plaintiff's history of CRPS on the right side.  (R. 1994, 1998.)  On April 13, 2016, Dr. Wolf produced a letter outlining that plaintiff had "diagnoses of CRPS on the right side which has been refractory to pain management and therapy" and "her ability to work is impacted by the chronic and severe CRPS on the right side."  (R. 2001.)  In accompanying treatment notes, Dr. Wolf stated that she did not believe plaintiff had a permanent disability, but that plaintiff did have an established diagnosis of CRPS and future revision carpal tunnel release carried the risk of continued symptoms of CRPS.  (R. 2005-06.)

Treatment notes document that plaintiff experienced common symptoms of CRPS.  For example, in August of 2014, Dr. Wolf noted that plaintiff's right hand featured "purplish discoloration" and abnormal sweating.  (R. 908, 1970). Assessment comments detailed that plaintiff's right hand was

"[e]xquisetly [sic] sensitive to touch" and "very tender to even very light touch."  (R. 908, 911.)

The ALJ and treating sources further allude to the fact that plaintiff's pain complaints were disproportionate to, or contradicted, objective medical findings.  The ALJ referred to treatment notes that plaintiff's MRI scans did not show stenosis significant enough to account for her pain complaints.  (R. 21, 1959.)  Dr. Wolf's commentary distinguishes plaintiff's complaints of pain from her right-hand carpal tunnel syndrome, as Dr. Wolf noted that surgery would not solve the "extreme pain" and plaintiff's entire palm was hypersensitive.  (R. 1575, 1964, 1980.)  Disproportionate pain complaints and extreme sensitivity to touch are clinically documented signs that can be associated with CRPS.  SSR 03-02p, 68 Fed. Reg. at 59,974.

To the extent that the ALJ may have discarded the CRPS findings as irregular because Dr. Wolf was the only medical source to formally diagnose plaintiff with CRPS and later physicians did not refer to the diagnosis, such irregularity "does not excuse the ALJ's failure to consider CRPS."  McGinley v. Berryhill, No. 17-cv-2182 (JGK) (RWL), 2018 WL 4212037, at *16 (S.D.N.Y. July 30, 2018) (remanding for further record development where the ALJ had not considered a diagnosis of CRPS because the doctor's comments were unclear).  If the ALJ found the record to be unclear or inconsistent regarding whether

11

plaintiff had CRPS, the ALJ could have sought an explanation from the treating doctors.

Thus, plaintiff's CRPS was a medically determinable impairment, and the ALJ erred in not evaluating its severity at Step Two.  Because the ALJ did not establish CRPS as a medically determinable impairment, the ALJ did not evaluate the intensity, persistence, and limiting effects of plaintiff's CRPS symptoms to determine the extent to which they limit plaintiff's ability to work.

### b. *The ALJ's failure to evaluate CRPS as an impairment was not harmless error.*

An ALJ's failure to classify an impairment as severe at Step Two is harmless if the ALJ finds other severe impairments and considers the omitted impairment in the subsequent analysis. *See, e.g.*, O'Connell v. Colvin, 558 F. App'x 63, 65 (2d Cir. 2014) (finding ALJ's omission of a right knee impairment to be harmless error because the ALJ found other severe impairments and "specifically considered" the right knee dysfunction in later steps); Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (classifying ALJ's omission of anxiety and panic disorders as harmless error because the ALJ identified other severe impairments and "specifically considered" anxiety and panic attacks in later steps).  When determining whether an individual is disabled, an ALJ shall consider "the combined

effect of all of the individual's impairments."  42 U.S.C
§ 423(d)(2)(B).

The Commissioner contends that any failure to assess CRPS
at Step Two amounts to harmless error because the ALJ found
other severe impairments and considered the effects of all
impairments at subsequent steps.  (Def. Br. 4-5.)  However, the
ALJ's later analysis does not cure his failure to consider
plaintiff's CRPS at Step Two because the analysis does not make
clear whether the ALJ considered the effects of CRPS.  *See,
e.g.*, Bernstein v. Astrue, No. 3:09-cv-17-J-34MCR, 2010 WL
746491, at *5 n.9 (M.D. Fla. Mar. 3, 2010) ("[T]he mere mention
of diagnosis and symptoms which may be associated with RSD does
not equate to an evaluation of the intensity, persistence, and
limiting effects of Plaintiff's RSD.").  The ALJ's failure to
evaluate plaintiff's CRPS at all, let alone in accordance with
SSR 03-02p, undermines the entire disability assessment.  *See*
Hill v. Astrue, No. 6:10-cv-46-ORL-GJK, 2011 WL 679940, at *10
(M.D. Fla. Feb. 16, 2011) ("The ALJ's failure to evaluate RSDS
in accordance with SSR 03-2p at step two of the sequential
evaluation process necessarily undermines the ALJ's RFC
assessment, credibility determination, and hypothetical question
to the VE.").

The ALJ's lack of engagement with plaintiff's diagnosis of
CRPS renders suspect the ALJ's evaluation of plaintiff's

symptoms and credibility.  CRPS often results in "intense pain" that is disproportionate to the originating injury and unsupported by objective medical evidence, and "conflicting evidence in the medical record is not unusual."  SSR 03-02p at 59,972-59,973; *see* <u>Cooley v. Colvin</u>, No. 12-cv-1284, 2013 WL 12224205, at *4 (N.D.N.Y. Oct. 15, 2013), <u>report and recommendation adopted</u>, No. 6:12-cv-1284 (NAM/VEB), 2013 WL 12224206 (N.D.N.Y. Nov. 4, 2013)  (noting that with CRPS "the lack of supporting diagnostic and clinical findings is to be expected and may not provide a sound basis for rejecting a claimant's complaints of severe pain").  Here, the ALJ's discrediting of plaintiff's subjective pain complaints suggests the ALJ neither explicitly nor implicitly considered the effects of CRPS or the SSR 03-02p rubric.

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent" with medical and record evidence, and her allegations "not credible to the extent alleged."  (R. 19-21.)  The ALJ reasoned that MRI scans detected no significant stenosis to account for such pain, left hand pain was the result of overcompensating for the right hand, and plaintiff refused another surgery even though she continued to complain of pain. (<u>Id.</u>)  However, the record also indicates that: orthopedic specialists who reviewed those MRIs noted CRPS could be the

cause of plaintiff's pain; only plaintiff, not her treating sources, theorized that her left hand pain could be due to overuse; and Dr. Wolf previously noted the risks of surgery included continued pain, a recurrence of the problem, and need for further surgery.  (R. 1411, 1415, 1473, 1980.)  Given that the ALJ's interpretation of the record contradicts administrative guidance on how to evaluate CRPS, the Court cannot be certain that the ALJ's failure to consider plaintiff's CRPS was not prejudicial.  *See, e.g.*, Mills v. Comm'r of Soc. Sec., No. 1:16-cv-1190, 2017 WL 4083149, at *6 (N.D. Ohio July 27, 2017) (finding the ALJ erred by primarily relying on medical evidence to determine plaintiff's credibility because that approach was inconsistent with SSR 03-02p); Hunt v. Astrue, No. EDCV 08-00299-MAN, 2009 WL 1519543, at *6 (C.D. Cal. May 29, 2009) (finding that for a CRPS analysis, "the ALJ's reliance on an absence of objective medical findings as a basis to discredit plaintiff's subjective pain testimony is unconvincing").

SSR 03-02p advises ALJs to evaluate the extent to which CRPS symptoms also dictate a claimant's ability to perform basic work activities.  SSR 03-02p, 68 Fed. Reg. at 59,974-75.  For example, chronic pain and prescription medications may impact a claimant's concentration; because pain is often a prevalent symptom of CRPS that is potentially disabling, "when evaluating RFC, the effects of chronic pain and the use of pain medications

must be carefully considered." Id.  Although the ALJ
acknowledged that plaintiff attended weekly medication
management with a social worker, the ALJ's RFC[5] analysis does not
discuss how plaintiff's medication prescriptions could impact
her ability to work.  (R. 22.)  On remand, a determination of
plaintiff's RFC may require the ALJ to review plaintiff's pain
medications to properly determine their impact on her ability to
function in the workplace, such as whether the medications
produce non-exertional limitations. *See, e.g.*, Johnson v.
Calvin, No. 13-C-1023, 2014 WL 2765701, at *7 (E.D. Wis. June
18, 2014) (noting the ALJ failed to address that plaintiff used
medications commonly used to treat CRPS, such as muscle
relaxers, anti-epileptic drugs, and anti-depressants); Hunt,
2009 WL 1519543, at *7, *9 (instructing ALJ to make detailed
findings regarding the efficacy of plaintiff's pain medications
for CRPS).

The ALJ partially grounded his RFC assessment in the
opinions of two non-examining state medical consultants, whose
opinions the ALJ afforded partial weight.  (R. 21.)  These
consultants rendered their 2014 opinions before plaintiff's

---

[5] When an individual's impairment does not meet or equal a listed impairment,
the ALJ will "make a finding [of the individual's] residual functional
capacity based on all the relevant medical and other evidence in [the] case
record."  20 C.F.R. § 404.1520(e).  An individual's RFC is the most an
individual can still do despite his or her limitations.  20 C.F.R.
§ 404.1545(a)(1).

medical record contained a majority of Dr. Wolf's CRPS treatment records.  The consultants acknowledged Dr. Wolf's initial CRPS suspicions, but they did not find CRPS to be a severe impairment and noted that they would need further notes from Dr. Wolf.  (R. 138, 166.)  Because the ALJ compiled the RFC without considering the effect of CRPS symptoms, evaluating plaintiff's CRPS pursuant to SSR 03-02p may alter the ALJ's RFC assessment and subsequent hypothetical questions for a Vocational Expert.

Even where an ALJ determined that a claimant's CRPS constituted a severe impairment, reviewing courts have remanded where the ALJ did not evaluate the CRPS impairment pursuant to SSR 03-02p.  For example, in Pensiero v. Saul, the ALJ identified claimant's CRPS as a severe impairment but neither referred to SSR 03-02p nor indicated that he was aware of the Ruling.  No. 3:19-cv-00279 (WIG), 2019 WL 6271265, at *5-6 (D. Conn. Nov. 25, 2019).  Because the ALJ's decision suggested the ALJ was unaware of the guidelines set forth in SSR 03-02p for assessing CRPS claims, the court instructed the ALJ to assess claimant's CRPS under the Ruling.  Id.; see also Verstreate v. Saul, No. 1:18-cv-00308 CJS, 2020 WL 1242405, at *12 (W.D.N.Y. Mar. 16, 2020) (remanding to correct ALJ's legal error of failing to comply with SSR 03-02p); Cooley, 2013 WL 12224205, at *8 (remanding and instructing the ALJ to reconsider CRPS in accordance with SSR 03-02p).

Absent any reference to or meaningful discussion of plaintiff's CRPS and SSR 03-02p, the record is not clear that the ALJ properly considered the effects of all of plaintiff's impairments.  Thus, the Court cannot conclude that the ALJ's error was harmless.  In remanding, the Court does not suggest that plaintiff's CRPS amounts to a severe impairment or that it is disabling.  Rather, the ALJ has a duty to consider all evidence in the record and, because SSR 03-02p sets forth specific guidelines to assess CRPS impairments, the ALJ shall follow those guidelines to examine plaintiff's CRPS.

## II.  The ALJ erred in not considering the impact of plaintiff's headaches on her ability to function.

Plaintiff argues that the ALJ erred at Steps Two and Three in not finding that plaintiff's headaches constituted a severe impairment.  (Pl. Br. 5.)  The Commissioner argues that any errors were harmless because the ALJ discussed all limitations at later steps.  (Def. Br. 5.)

A severe impairment is "any impairment or combination of impairments which significantly limits [a plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  A severe impairment must meet the durational requirement, such that the impairment be "expected to result in death, [or] it must have lasted or must be expected to last for

a continuous period of at least 12 months."  20 C.F.R.
§ 416.909.

The ALJ did not find plaintiff's headaches to be a severe
impairment.  The ALJ afforded partial weight to a form that Dr.
Leon filled out in March of 2016, in which Dr. Leon checked
boxes that indicated that plaintiff's headaches would likely not
result in two to four absences per month, because the record
supported that headaches are not likely to cause absences.  (R.
22.)  The ALJ emphasized that Dr. Leon "provided no objective
basis on which he based his check marked opinions."  (Id.)  The
ALJ also referenced a form from February of 2018 in which Dr.
Orellana indicated that plaintiff's headaches would cause four-
to-seven absences per month, but the ALJ noted that Dr. Orellana
failed "to cite supporting objective findings for his conclusory
opinions."  (R. 23.)  To the extent that the ALJ found a lack of
objective medical evidence weighed against a determination that
plaintiff's headaches were a severe impairment, courts in the
Second Circuit have not "required that an impairment, including
migraines, be proven through objective clinical findings."
Mnich v. Colvin, No. 14-cv-740, 2015 WL 7769236, at *21
(N.D.N.Y. Sept. 8, 2015); see also Groff v. Comm'r of Soc. Sec.,
No. 7:05-cv-54, 2008 WL 4104689, at *7 (N.D.N.Y. Sept. 3, 2008)
("there exists no objective clinical test which can corroborate
the existence of migraines").

The Commissioner argues that any failure to evaluate headaches at Step Two is harmless error.  A finding of harmless error "is appropriate only when it is clear that the ALJ considered the claimant's headaches and their effect on his or her ability to work during the balance of the sequential evaluation process."  Zenzel v. Astrue, 993 F. Supp. 2d 146, 153–54 (N.D.N.Y. 2012).  Here, it is not clear from the ALJ's decision whether the ALJ considered the impact plaintiff's headaches could have on plaintiff's ability to function.  On remand, the ALJ shall evaluate the impact of plaintiff's headaches, in addition to her other impairments, on her ability to work.  See, e.g., Dodson v. Berryhill, No. 6:16-cv-0597 (LEK), 2017 WL 2838167, at *11 (N.D.N.Y. June 30, 2017) (finding the ALJ's failure to evaluate claimant's migraines at Step Two and sequential steps was a legal error requiring remand).

**III. Substantial evidence does not support the ALJ's determination that plaintiff's impairments did not meet Listing requirements.**

Plaintiff argues that her impairments meet or medically equal Listing 1.02B and 1.04A.  (Pl. Br. 11–16.)  At Step Three, the ALJ concluded that plaintiff's physical impairments were not of listing level severity and a medical source did not produce findings of equivalent severity.  (R. 18.)

"For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An

impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original). To qualify for benefits by demonstrating that an impairment is the equivalent of a listed impairment, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Id. at 531 (emphasis in original). A mere showing that the overall function of an impairment or combination of impairments is as severe as a listed impairment will not suffice. Id. at 531–32.

   a. *Listing 1.02B*

      Plaintiff argues that the ALJ erred in not considering whether her impairments met or medically equaled Listing 1.02B. Under Listing 1.02B, an impairment must have a gross anatomical deformity, coupled with a "major peripheral joint in each upper extremity . . . resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.02B. Pursuant to 1.00B2c, an inability to perform fine and gross movements entails "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.00B2c.

"[T]here is no error in failing to discuss a particular Listing when substantial evidence indicates a claimant did not satisfy the Listing." Jones v. Berryhill, 425 F. Supp. 3d 401, 419 (S.D.N.Y. Nov. 12, 2019). However, this record contains conflicting evidence over whether plaintiff's impairments met the Listing 1.02B criteria. The ALJ found that plaintiff's right-hand contracture constituted a severe impairment, which would partially satisfy the Listing's threshold requirement for a gross anatomical deformity. *See* R. 18 (classifying plaintiff's right-hand contracture as a severe impairment); Listing 1.02 (referencing contracture as a "gross anatomical deformity"). Physical therapy notes indicate that by April of 2016, plaintiff's right hand was held in flexion with an inability to extend fingers. (R. 1459.) Plaintiff has carpal tunnel syndrome in both hands, and carpal tunnel revision surgeries resulted in mild improvement. (R. 1219, 1545.) During physical exams, plaintiff presented as unable to extend her fingers, with numbness of her right hand and left arm. (R. 1213, 1219, 1401, 1437, 2016, 2057.) In 2018, Dr. Orellana indicated that plaintiff was unable to use her right hand and could use her left hand for 50% of the day. (R. 962.) At her second hearing, plaintiff testified that she would drop objects because her hands were numb. (R. 2113–16.)

The record also contains diverging evidence that could suggest functionality of the hands and arms.  For example, assessments note that plaintiff had strength measuring five-out-of-five bilaterally from C5-T1 with no upper motor neuron signs. (R. 899, 911.)  Because the record contains conflicting evidence and the ALJ did not explain his reasoning, the Court cannot conclude that substantial evidence supports the ALJ's determination.  *See* Loescher v. Berryhill, No. 16-cv-300-FPG, 2017 WL 1433338, at *4-5 (W.D.N.Y. Apr. 24, 2017) (declining to find that substantial evidence supported the ALJ's unexplained Step Three decision where the record contained evidence that a claimant would meet Listing requirements, but the record also contained medical evidence to the contrary).  Thus, on remand the ALJ shall analyze plaintiff's impairments under the Listing 1.02B requirements.

b. *Listing 1.04A*

A claimant bears the burden of demonstrating that a disability meets all specified criteria for a spinal disorder. Otts v. Comm'r of Soc. Sec., 249 Fed. App'x 887, 889 (2d Cir. 2007).  Listing 1.04A provides in relevant part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

23

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.04A.  Accordingly, plaintiff must show a compromised nerve root with evidence of neuro-anatomic pain distribution, limited spine motion, and motor loss accompanied by sensory or reflex loss.

The ALJ provided no explanation for his determination that plaintiff's impairments did not rise to the level of Listing 1.04A.[6]  (R. 18.) The ALJ's failure to analyze the Listing criteria alongside plaintiff's evidentiary support amounts to legal error.  *See* Davenport v. Saul, 2020 WL 1532334, at *21 (D. Conn. Mar. 31, 2020).

However, upon review of the record, plaintiff has not fulfilled the criteria for Listing 1.04A.  The medical records do not include evidence of a nerve root compression, which is a threshold requirement.  *See, e.g.*, Burch v. Comm'r of Soc. Sec., No. 1:15-cv-9350-GHW, 2017 WL 1184294, at *9 (S.D.N.Y. Mar. 29, 2017) (upholding ALJ's determination that an impairment did not meet Listing 1.04A because the record offered no evidence of

---

[6] At Step Three, the ALJ paid "special attention" to Listing 1.04.  (R. 18.) However, the Court only considers Listing 1.04A because plaintiff specifically referred to Listing 1.04A on appeal to this Court.  (Pl. Br. 15.)

nerve root compression); Beall v. Colvin, No. 5:16-cv-92, 2017
WL 1155809, at *4 (N.D.N.Y. Mar. 27, 2017) (rejecting
plaintiff's Listing 1.04A argument when MRI results showed no
evidence of nerve root compression and sensory exams were
generally normal).  MRIs and X-Rays revealed that plaintiff's
spine had no significant stenosis and the cervical cord was
normal.  (R. 897, 900-02, 907, 912, 1009, 1043, 1483, 1503,
1523, 1971, 2023, 2033.)  Rather, as plaintiff's counsel
acknowledges, evidence indicates that plaintiff's spine
impairments may have been "caused by CRPS and not nerve root
compression."  (Pl. Br. 15.)  For example, after examining
plaintiff for neck pain, Dr. Moss noted that plaintiff's MRI
"looks good" and he would not recommend surgery for her cervical
spine, while her "presentation is more consistent with RSD of
the right hand."  (R. 912.)

     Thus, plaintiff has not upheld her burden to prove that her
spinal impairment meets all specified criteria in Listing 1.04A,
and the ALJ's failure to perform a Listing 1.04A analysis
amounts to harmless error that does not require review on
remand.  See Otts, 249 F. App'x at 889 (finding that claimant's
impairment did not meet Listing 1.04A where claimant had the
threshold requirement of a herniated disc but failed to
demonstrate evidence of the remaining Listing criteria); Johnson
v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application

of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

**IV. Substantial evidence supports the ALJ's decision to assign partial or little weight to the medical source statements in the record.**

Plaintiff argues that the ALJ erred in not assigning greater weight to the form opinions submitted by plaintiff's doctors, Dr. Leon and Dr. Orellana.  (Pl. Br. 16-23.) The Commissioner contends that the ALJ appropriately accorded partial weight to the opinions that the record supported and that the ALJ did not have to accord greater weight to checkbox opinions that were inconsistent with medical findings or which provided no rationale.  (Def. Br. 7-8.)

*a. Dr. Leon*

The medical opinions of treating physicians are generally given more weight than other evidence.  The treating physician rule[7] stipulates that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

[7] The treating physician rule applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527.  The current SSA regulations eliminate this rule, but the regulations apply to cases filed on or after March 27, 2017.  20 C.F.R. § 404.1520(c).  The treating physician rule applies to plaintiff's claim because plaintiff first filed her claim in 2013.  (R. 477.)

evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). However, a treating physician's opinion will not receive controlling weight to the extent that it is inconsistent with substantial evidence in the record. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

In determining the amount of weight to give to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. 20 C.F.R. § 404.1527. It is generally appropriate to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(c)(5).

The ALJ assigned partial or little weight to two opinion forms from Dr. Leon, who was plaintiff's treating physician since at least 2013. (R. 21–22, 647.) While the ALJ assigned partial weight to Dr. Leon's opinions that were consistent with the record, the ALJ assigned little weight to the checkbox form opinions whose conclusory findings were not consistent with medical records and provided no rationale. (R. 22.) For example, in a form from August 2016, Dr. Leon indicated that

fibromyalgia contributed to plaintiff's headaches and that her
headaches would cause her to be absent from work from two to
four times per month.  (R. 939-41.)  However, the record
contains no diagnosis of fibromyalgia, and Dr. Leon's assertion
contradicts a form he filled out in March 2016 that states there
was no diagnosis of fibromyalgia.  *Compare* R. 938 ("No diagnosis
of fibromyalgia"), *with* R. 935 (indicating that fibromyalgia
contributed to plaintiff's headaches).  Due to these
inconsistencies and lack of corresponding support in the record,
the ALJ provided good reasons to assign less-than-controlling
weight to Dr. Leon's opinions on the checkbox form.  *See, e.g.*,
Heaman v. Berryhill, 765 F. App'x 498, 501 (2d Cir. 2019)
(summary order) (upholding an ALJ's decision to give treating
physician opinions less weight when the opinions were mere
checkbox forms that did not cite to clinical findings and were
inconsistent with treatment notes).  Thus, substantial evidence
supports the ALJ's decision to assign partial or little weight
to Dr. Leon's opinions.

   b. *Dr. Orellana*

   A physician who does not treat the plaintiff during the
period between her alleged onset date and date of last insured
("DLI") does not qualify as a treating physician.  Monette v.
Astrue, 269 F. App'x 109, 112-13 (2d Cir. 2008) (citing Shaw v.
Chater, 221 F.3d 126, 134 (2d Cir. 2000)).  As the Second

Circuit has stated, "[t]he fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight.  Indeed, we have regularly afforded significant weight to such opinions." Id. at 113.  However, where substantial evidence in the record demonstrates that the opinion is inconsistent with the record, the ALJ does not err by refusing to accord the later treating physician significant weight.  Id. (citing Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir. 1981)).

Dr. Orellana does not qualify as a treating physician because he began treating plaintiff in July 2017, after plaintiff's DLI of December 31, 2015.  (R. 510, 965.)  The ALJ gave little weight to the forms that Dr. Orellana completed in February of 2018 because Dr. Orellana had only treated plaintiff for six months and the checkbox forms lacked support from objective medical findings.  (R. 23.)  Dr. Orellana completed a Physical Medical Source Statement in February of 2018, six months after Dr. Orellana began seeing plaintiff in July of 2017.  (R. 959.)  In this checkbox form, Dr. Orellana indicated that plaintiff could sit for forty-five minutes before needing to get up, plaintiff could stand for thirty minutes at a time, and in a work day plaintiff could stand for less than two hours and sit for two hours.  (Id.)  The record does not contain

contemporaneous treatment notes to support these statements, and Dr. Orellana indicated that he was not familiar with plaintiff's history prior to treating her.  (R. 971.)  Given the short duration of the relationship and the lack of record support for Dr. Orellana's conclusory selections on the forms, substantial evidence supports the ALJ's decision to assign little weight to Dr. Orellana's forms.  (R. 965.)

   c. *The Reports of State Agency Consultants from 2014*

   Plaintiff argues that the ALJ erred in relying on the 2014 assessments of two state agency doctors, neither of whom treated or examined plaintiff, because their opinions were not based upon a review of the entire record.  (Pl. Br. 16–17.)

   The weight that an ALJ assigns to opinions of non-examining sources depends "on the degree to which they provide supporting explanations for their medical opinions."  20 C.F.R. § 404.1527(c)(3).  The ALJ should not rely heavily on such opinions if the sources provided their opinions without having a full review of the record.  *See* Tarsia v. Astrue, 418 F. App'x 16, 18 (2d Cir. 2011) (remanding where the ALJ relied on a state consultant's opinion rather than the treating physician because the record was not clear that the consultant had reviewed all relevant medical information).

   Here, the ALJ afforded partial weight to reports from 2014 from two state agency physicians, Dr. Medina and Dr. Connolly.

(R. 22.)  The ALJ appears to have primarily derived the RFC from these assessments, although the ALJ imposed additional limitations of not crawling or climbing ropes, ladders, or scaffolds based on subsequent evidence.  (R. 21–22.)  Because the agency consultants rendered their opinions in 2014, their RFC assessments did not have the benefit of the complete medical record.  For example, Dr. Medina referred to plaintiff's CRPS and noted that the medical evidence was "insufficient to make a determination until more studies are submitted by Dr. Wolf," and Dr. Connolly similarly noted signs of possible CRPS.  (R. 138, 151, 166.)  Subsequent medical evidence reflected signs of CRPS, which may suggest that plaintiff's abilities could have become more limited after the consultants rendered their opinions. When determining plaintiff's RFC on remand, and upon review of the complete medical records, the ALJ shall consider whether to assign less weight to the state agency opinions.

**V.   Substantial evidence supports the ALJ's decision to assign little weight to the opinion of a physical therapist.**

Plaintiff argues that the ALJ should have assigned greater weight to Mr. Merolle's physical therapy assessment form.  (Pl. Br. 23–29.)  The ALJ gave "little weight to the opinion of Mr. Merolle because he had only been the claimant's physical therapist for a short time and he is not an acceptable medical source."  (R. 24.)

Although a physical therapist is not an "accepted medical source" under Social Security Regulations, a physical therapist is an "other source" whose assessments the ALJ may consider regarding the severity and functional impact of a claimant's impairments.  *See* 20 C.F.R. § 404.1513; <u>Sixberry v. Colvin</u>, No. 7:12-cv-1231 (GTS), 2013 WL 5310209, at *8 (N.D.N.Y. Sept. 20, 2013).  The ALJ has the discretion to consider opinions from "other sources," but the ALJ must consider the objective medical evidence from these sources.  <u>Parsons v. Berryhill</u>, No. 3:17-cv-1550 (RMS), 2019 WL 1199392, at *9 (D. Conn. Mar. 14, 2019).

Mr. Merolle completed a Medical Source Statement in 2014. (R. 2093.)  Mr. Merolle opined that plaintiff could: sit, stand, and walk for zero-to-two hours in a working day; frequently lift less than ten pounds and never lift more than twenty pounds; and never twist, crouch, or climb ladders.  (R. 2093-94.)  As a physical therapist and non-acceptable medical source, Mr. Merolle's opinion is not due controlling weight.  *See* <u>Cascio v. Astrue</u>, No. 10-cv-5666 (FB), 2012 WL 123275 (E.D.N.Y. Jan. 17, 2012) ("[Physical therapist opinions] are not entitled to the same deference as the opinion of a treating physician.").  To the extent plaintiff argues that Dr. Leon endorsed Mr. Merolle's opinion, thereby adopting those findings, that reasoning falls short.  Although Dr. Leon signed off on physical therapists' assessments and treatment progress reports, Mr. Merolle's 2014

opinion does not contain a physician's signature.  *Compare* R.
2094 (Mr. Merolle's opinion), *with* R. 1419, 1437, 1463, 1471
(notes signed by Dr. Leon).  Thus, the ALJ did not need to
evaluate the opinion pursuant to the treating physician rule.
*Cf.* Wiggins v. Colvin, No. 3:13-cv-1181 (MPS), 2015 WL 5050144,
at *2 (D. Conn. Aug. 25, 2015) (requiring the ALJ to evaluate an
"other source" opinion according to the treating physician rule
when an acceptable medical source co-signed the opinion).

However, the medical records include treatment notes with
objective findings from various physical therapists who worked
with plaintiff from 2013 to 2017.  (R. 692–773, 792–95, 1396–97,
1673–946.)  An ALJ must consider all "objective medical
evidence" when evaluating the impact a claimant's symptoms may
have on the claimant's ability to work.  20 C.F.R.
§ 404.1529(c)(2).  Because an ALJ considers all relevant
evidence in the record before making a disability determination,
on remand the ALJ shall consider the physical therapy treatment
records to determine whether plaintiff is disabled.

**VI.  The ALJ erred in not incorporating all of plaintiff's
     impairments into the hypotheticals the ALJ proposed to
     the Vocational Expert.**

Plaintiff alleges that the ALJ failed to include all
impairments, including plaintiff's CRPS and headaches, in the
hypotheticals proposed to the Vocational Expert.  (Pl. Br. 36–
37.)  An ALJ must evaluate the combined impact of all

impairments, regardless of their severity, on a claimant's ability to work.  McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion . . ., and accurately reflect the limitations and capabilities of the claimant involved."  Id. at 152.

Here, the ALJ's hypotheticals to the expert did not consider any limitations that could derive from plaintiff's headaches, CRPS, or cervical spine impairment.  (R. 2118-24.) Thus, substantial evidence in the record did not support the hypotheticals and the ALJ should not have relied upon the expert's testimony at Step Five.  On remand, the ALJ shall propose hypotheticals that incorporate all of plaintiff's impairments.

<u>**CONCLUSION**</u>

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #26-1) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #21-1) is DENIED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal

Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).


        SO ORDERED this 29th day of March 2021, at Hartford, Connecticut.


                                        _____/s/_____

                                        Robert A. Richardson
                                        United States Magistrate Judge